**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GRANGE INSURANCE ASSOCIATION,**<br><br>   Plaintiff,<br><br>   v.<br><br>**MEREDITH LINTOTT,**<br><br>   Defendant. | Case No.: 11-CV-6419 YGR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

This suit arises out of allegedly defamatory statements made by defendant Meredith Lintott ("Lintott") during her campaign for re-election to the position of District Attorney for Mendocino County, California. Robert Forest, the individual who was allegedly defamed by the statements, filed a lawsuit against Lintott in California state court ("Forest action") in which he alleges two separate counts of defamation and one count each of intentional infliction of emotional distress and negligent infliction of emotional distress. (Dkt. No. 32-3 ("Forest action compl.").) Plaintiff Grange Insurance Association ("Grange"), Lintott's insurer, seeks a declaration that it owes no duty to defend or indemnify her in the Forest action because the nature of the Forest action is not covered by her homeowner's insurance policy (the "Policy"). (*See* Dkt. No. 1 ¶ 17.)

Now before the Court is Grange's motion for summary judgment. (Dkt. No. 32.) In response, Lintott has filed an opposition and a motion to strike. (Dkt. Nos. 33, 38.) Grange has responded to both. (Dkt. Nos. 34, 35.)

Having carefully considered the papers and evidence submitted, the pleadings, and the arguments of counsel, and for the reasons set forth below, the Court hereby **DENIES** the motion to strike and **GRANTS IN PART** Grange's motion for summary judgment.

### I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this order are not reasonably in dispute.

### A. Defendant's Homeowner's Insurance Policy

Grange issued a "Homeowners with HomePak Plus" insurance policy (the "Policy") to Lintott effective from June 5, 2010, to June 5, 2011.  (Dkt. Nos. 32-9, 32-10.)  The Policy consisted of a series of forms and endorsements, together with a declaration of coverages.  (*Id*.)  Lintott's total annual policy premium is set at $1,096.00; of this, $31.00 was an "additional premium" for a personal injury endorsement providing, in part, broader personal liability coverage.[1]  (Dkt. Nos. 32-9 at 3; 32-10 at 22.)

As a general framework, the Policy provides coverage in the event of "bodily injury" or "property damage" caused by an "occurrence."  (Dkt. No. 32-10 at 7.)  The Policy sets forth definitions for each of those terms.  "Occurrence" is defined as "**an accident**, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property Damage.'"  (Dkt. No. 32-9 at 17 (emphasis supplied).)  "Property Damage" is defined as "physical injury to, destruction of, or loss of use of tangible property."  (*Id.*)  "Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results."  (*Id.* at 17.)  The Endorsement requiring the "additional premium" of $31.00 described above, further defines the term "Bodily injury" to include "Personal injury."  (Dkt. No. 32-10 at 22.)  The Endorsement defines "Personal injury" as including, in part, "injury arising out of one or more of the following offenses: . . . 2. Libel, slander or defamation of character; . . . ."  (*Id.*)

---

[1] Other endorsements and forms which made up the Policy included: a loss payable endorsement; a liability policy exclusion; a limited fungi, wet or dry rot, and bacteria endorsement; a water back up and sump overflow endorsement; a HomePak Plus endorsement; a special form that set forth definitions, property coverages, perils insured against and exclusions, conditions, liability coverages and exclusions, and additional coverages and conditions; a special provisions endorsement; an amendatory endorsement; a workers compensation residence employees endorsement; a mechanical/electrical consequential loss provision; a home day care liability exclusion; an incidental farming personal liability endorsement.  (*See generally*, Dkt Nos. 32-8, 32-9, 32-10.)

### B. Campaign Statements

In 2010, Lintott was running for re-election as the incumbent District Attorney for Mendocino County. During her campaign, she "prepared" and "approved" three radio advertisements. (Dkt. No. 32-11 ("Stipulation").) One of those radio advertisements accused her challenger, David Eyster, of accepting improper campaign contributions from Robert Forest and others with pending criminal cases. (*Id.*) That advertisement said:

> Eyster has also failed to tell you about the cash gifts to his campaign from men with pending felony cases. . . . The most alarming, $10,000, comes from a man who assaulted an unarmed man with a loaded gun. Seeking a concealed weapons permit he petitioned the court and was opposed by Lintott. The courts agreed with Lintott. Eyster has pocketed a $10,000 donation.

(Recording attached to Stipulation; Dkt. No. 32-4.) Lintott also made comments about the man behind the $10,000 contribution during a debate. (Stipulation at 2.) Although none of the statements reference Forest by name, the comment about the "most alarming" donation was about him and his identity was known to Lintott when she approved the advertisements. (*See* Dkt. No. 33-2 ¶ 7 ("Lintott Decl.").) Lintott based all of the statements about the impropriety of Forest's donations to her opponent's campaign on her "personal knowledge and inquiry regarding Mr. Forest." (*Id.*)

### C. Underlying Defamation Suit

In 2011, Forest brought suit against Lintott in California state court. (Dkt. No. 32-3 at 8.) In his complaint, Forest asserts four claims: (1) a defamation claim based on the radio advertisement; (2) a defamation claim arising out of the comments Lintott made during the debate; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress. (Dkt. No. 32-3 at 3-7.) Forest alleges that Lintott "authorized and directed the publication of statements about Plaintiff on radio stations" and that she authorized and directed that such statements be broadcasted to thousands of people throughout Mendocino County. (*Id.*) Forest also alleges that Lintott knew that such statements were false when she authorized and directed that they be broadcasted, as Lintott herself had personally dismissed all criminal charges against Forest. (*Id.*) Forest argued that the statements were defamatory because the felony assault charges that had at

one time been pending against him had been dismissed by the time Lintott made the statements. (*Id.* ¶¶ 8, 17.)

By letter dated November 2, 2011, Grange notified Lintott that it would provide an attorney and a defense for her in the Forest action under a reservation of rights. (Dkt. Nos. 32-7, 34-2 ¶ 2.) The reservation of rights permitted Grange to disclaim coverage if any of the claims brought in the Forest action did not constitute an "occurrence" as defined in the policy and to seek reimbursement from Lintott. (Dkt. No. 32-7 at 8-9.) No party argues that the emotional distress claims are covered; the coverage dispute turns entirely on whether the defamation claim is covered.

Through counsel provided by Grange, Lintott moved to strike the complaint in the Forest action pursuant to California's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, California Code of Civil Procedure section 425.16. On February 3, 2012, the state trial court ruled that "the allegations based on the debate statements do not survive the SLAPP challenge." (Dkt. No. 32-12 at 6.) As to the claim based on the radio advertisement, however, it reasoned that:

> Setting aside the fact that the DA does not issue such permits and the FOREST wasn't specifically named in the ad, plaintiff's showing is sufficient to meet the minimal standard applicable to the second prong of the SLAPP test. This is by no means a determination that FOREST will prevail at trial. It is worth noting that the case law seems to permit candidates to say almost anything about each other, but FOREST was not a candidate. The statements concerning FOREST were directed at DA candidate Eyster, but nonetheless implied that FOREST engaged in reprehensible conduct. Defamation is a complicated tort. LINTOTT may have further defenses not advanced in response to this motion. Allowing this action to proceed seems inconsistent with the profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open. FOREST has, however, at least with respect to the political ad, demonstrated the minimal showing necessary to defeat the special motion to strike.

(*Id.* at 7.) The California Court of Appeal affirmed, holding that "a reasonable listener could have understood the advertisement as communicating the false statement that Forest had a pending felony case against him." (Dkt. No. 32-13 at 2.)

4

**D. The Instant Suit**

Grange filed suit against Lintott in this Court on December 19, 2011. Grange asserts that the statements in the advertisement that occasioned the Forest action were not the result of an "occurrence" as defined in the Policy. (Dkt. No. 1 ¶ 12.) Therefore, according to Grange, coverage does not exist for the statements made in the advertisement and Grange owes no duty to defend or indemnify Lintott in the Forest action. (*Id.*) Grange seeks a judicial declaration that it owes no duty to defend or indemnify, as well as reimbursement for expenses and indemnity it has already provided in defending Lintott in the Forest action. (*Id.* at 8.)

## II. LINTOTT'S MOTION TO STRIKE

Although styled as a motion to strike, Lintott's motion is in substance a collection of evidentiary objections. The Motion to Strike "addresses the admissibility of Separate Statements and exhibits that Plaintiff presents as evidence in support of its Motion for Summary Judgment." (Dkt. No. 36 at 2; *see also* Dkt. No. 38 ("MTS").) Lintott takes issue with certain of Grange's exhibits – for example, the exhibits to the Hardiman Declaration filed in support of Grange's summary judgment motion – arguing that they are either inadmissible or contain inadmissible evidence. (MTS at 13-15). Motions to strike, however, are governed by Federal Rule of Civil Procedure 12(f), which provides that such motions be brought on the grounds that material in a pleading is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Thus, Lintott's motion does not state grounds appropriate for a motion to strike.

Construing Lintott's motion as objections to evidence does not save it, however. Objections to evidence must comply with Civil Local Rule 7-3(a), which states, "Any evidentiary and procedural objections to [a] motion must be contained within the [opposition] brief or memorandum." By filing her evidentiary objections as a separate motion, Lintott did not comply with this rule and was able to file fifteen pages of additional briefing on the subject.[2]

---

[2] In addition, Lintott's filing of this motion presents several violations of the local rules of this district. Lintott tried to file her Motion to Strike on May 23, 2014, as an attachment to her Opposition to the summary judgment motion. (*See* Dkt. No. 33-5.) On May 27, 2014, the Clerk designated that filing as erroneous in an unnumbered docket entry and directed Lintott to refile. More than a week later, on June 5, 2014, Lintott refiled the Motion to Strike. In that refiling, Lintott failed to set the hearing on the motion on 35 days' notice, as is required under the Local

5

Accordingly, Lintott's objections to evidence are **STRICKEN** and the motion to strike is **DENIED**.

### III. GRANGE'S SUMMARY JUDGMENT MOTION

Grange seeks summary judgment that under the terms of the Policy, it owes no duty to defend or indemnify Lintott in the Forest action, which alleges state torts including defamation stemming from statements Lintott made during the course of her reelection campaign. Grange contends that the policy covers defamation only if caused by an "occurrence," which the Policy defines as an "accident." Grange contends that the evidence adduced establishes that Lintott's statements were not accidents, but rather were intentional acts. Therefore, Grange argues that the Forest defamation action does not fall within the scope of the Policy, which provides coverage only where there is "occurrence-based," or "accidental" conduct. Based thereon, Grange argues that it is entitled to reimbursement of attorneys' fees and costs.

For the reasons that follow, the Court hereby **GRANTS IN PART** Grange's motion for summary judgment.

#### A. Legal Standards

Summary judgment is appropriate when no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of some alleged

---

Rules. Compounding matters, on June 5, Lintott filed an "ex parte" administrative motion seeking to the motion to strike heard on shortened time. (Dkt. No. 36.) Notwithstanding the "ex parte" administrative motion, Lintott filed, on the same day, a *stipulation* to shorten time, necessarily raising the question of why defense counsel believed that filing their motion for shortened time on an ex parte basis was justified, given that plaintiff was in fact readily located. The stipulation ignored this Court's Standing Order in Civil Cases, which advises, in paragraph 4, that requests for changes to the Court's law-and-motion calendar "which, in effect, do not allow the Court two weeks from the filing of the last brief until the scheduled hearing date are denied routinely."

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48 (dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party).

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion. *Id.* (quoting *Anderson*, 477 U.S. at 250). The opposing party's evidence must be more than "merely colorable" but must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows a genuine issue of material fact exists for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–1082 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted). Rather, a court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *See id.*; *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.")

1  Once the moving party has met its burden, the opposing party may not defeat a motion for
2  summary judgment in the absence of any significant probative evidence tending to support its legal
3  theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F. 2d 270, 282 (9th Cir. 1979)
4  (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

5  The construction of an insurance policy is a matter of law for the court in the absence of a
6  genuine dispute as to the material facts. *Continental Casualty Co. v. City of Richmond,* 763 F.2d
7  1076, 1079 (9th Cir. 1985). Because the scope of coverage under a written insurance policy is
8  solely a matter for judicial interpretation, an insurer's duty to defend under a policy is an issue
9  amenable to resolution on summary judgment. *Staefa Control-Sys. Inc. v. St. Paul Fire & Marine
10  Ins. Co*., 847 F. Supp. 1460, 1466 (N.D. Cal. 1994) (citing *Merced Mutual Ins. Co. v. Mendez,* 213
11  Cal.App.3d 41, 45, 261 Cal.Rptr. 273 (1989); *Allstate Ins. Co. v. Tankovich*, 776 F.Supp. 1394,
12  1396 (N.D. Cal. 1991), opinion amended on reconsideration, 875 F. Supp. 656 (N.D. Cal. 1994).

13  When interpreting an insurance policy, the intent of the parties and the reasonable
14  expectations of the insured are considered. *Continental Casualty Co.*, 763 F.2d at 1079-80 (citing
15  *Holz Rubber Co., Inc. v. American Star Insurance Co.,* 14 Cal.3d 45, 57, 120 Cal.Rptr. 415, 421,
16  533 P.2d 1055, 1061 (1975)). The best evidence of the intent of the parties is the policy language.
17  *Id.* (citing *City of Mill Valley v. Transamerica Insurance Co.,* 98 Cal.App.3d 595, 599, 159
18  Cal.Rptr. 635, 637 (1st Dist. 1979)). "Where the terms and conditions of an insurance policy
19  constitute the entire agreement between the parties, its interpretation is essentially a question of
20  law, particularly well-suited for summary judgment." *State Farm Fire & Cas. Co. v. Yukiyo, Ltd*.,
21  870 F. Supp. 292, 294 (N.D. Cal. 1994) (Williams, J.) (citing *St. Paul Fire & Marine Ins. Co. v.
22  Weiner,* 606 F.2d 864, 867 (9th Cir. 1979)).

23  The mutual intention of the parties at the time the contract was formed governs
24  interpretation of an insurance policy. *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645,
25  666, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995). The parties' intent "is to be inferred, if possible,
26  solely from the written provisions of the contract." *Id.* "The clear and explicit meaning of these
27  provisions, interpreted in their ordinary and popular sense, controls judicial interpretation unless
28  [the disputed terms are] used by the parties in a technical sense, or unless a special meaning is

given to them by usage." *Id.* (internal quotations and citations omitted). In other words, "[i]f the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Id.* at 667. In construing provisions of a contract, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Cal. Civ. Code § 1641.

If the disputed terms are ambiguous, however, a court must attempt to resolve the ambiguity by adopting the meaning that reflects the objectively reasonable expectations of the insured. *Montrose Chem. Corp.*, 10 Cal. 4th. at 667. If the court is unable to determine the objective expectations of the insured, the ambiguity is resolved against the insurer. *Id.*

Although an insurer's duty to indemnify extends to claims that are actually covered, the duty to defend extends to claims that are merely potentially covered. *Buss v. Superior Court*, 16 Cal.4th 35, 45-46 (1997). "To prevail [on the issue of the duty to defend], the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 608 (2003) (citations, internal quotations, and emphases omitted; brackets in original). The duty to defend, however, is limited by the nature and kind of risk covered by the policy. *Id.* Thus, "where there is no potential for coverage, there is no duty to defend." *Id.* (emphasis omitted).

### B. Coverage Analysis

Grange contends that there is no coverage or potential for coverage under the Policy for Lintott in the underlying action because defamation is covered only if it is caused by an accident and Lintott's statements at issue in the Forest action cannot constitute an accident as a matter of law. (Dkt. No. 32-1 at 14-16.) The Court agrees.

Here, the Policy provides coverage in the event of "bodily injury" caused by an "occurrence." (Dkt. No. 32-10 at 7.) An "occurrence" is defined as "**an accident**, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property Damage.'" (Dkt. No. 32-9 at

9

17 (emphasis supplied).) An Endorsement modified the definition of "Bodily injury" to include "Personal injury," which is defined as an "injury arising out of one or more of the following offenses: . . . 2. Libel, slander or defamation of character; . . .." (Dkt. No. 32-10 at 22.) Because "Personal injury" including defamation falls within the scope of "Bodily injury," which is covered only if caused by an "occurrence," defamation would be covered only if it was the result of an "occurrence," which, as set forth above, is defined as "an accident . . .." (Dkt. No. 32-10 at 7.) Viewing the Policy as a whole, it is apparent that in order for defamation to fall within the scope of coverage, it must have been the result of an accident.

The word "accident" as used in insurance policies denotes "an unintentional, unexpected, chance occurrence." *Fire Ins. Exch. v. Superior Court*, 181 Cal. App. 4th 388, 392 (2010). "The term "accident" refers to the nature of the act giving rise to the liability, not to the insured's intent to cause harm." *Id.* at 393. As such, when "the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury." *Id.* at 392; *see also Uhrich*, 109 Cal. App. 4th at 609 (no accident when the insured "performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."). In other words, "the insured's subjective intent is irrelevant." *Id.* at 392-93 (citing *Quan v. Truck Ins. Exch.*, 67 Cal. App. 4th 583, 598 (1998)).

With this in mind, there can be no reasonable argument that Lintott's statements concerning Forest were accidental. The unique context in which these statements were made, their substance, and Lintott's own declaration together establish that they were not. Lintott admits that she made the statements on more than one occasion, and indeed, approved of their dissemination on the radio during her re-election campaign. (*See* Dkt. No. 32-11 at 1-2; Lintott Decl. at 2-3; Lintott Decl. Exh. 2; Dkt. No. 32-12.) Moreover, Lintott researched and authored the allegedly defamatory statements; she admits that the statements are "based upon my personal knowledge and inquiry regarding Mr. Forest" (Dkt. No. 33-2 ¶ 7), and she specifically "prepared" and "approved" the content of the radio advertisement (Dkt. No. 32-11 at 1-2). Accordingly, no reasonable factfinder could determine that the statements were accidental as that term has been understood. Lintott's statement that she believed the statements to be true and that she did not intend to cause harm to

Forest is of no moment, for "the insured's subjective intent is irrelevant" in determining whether such actions constitute an "accident." *See Fire Ins. Exch.*, 181 Cal. App. 4th at 392-93 ("Where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.")  What does matter, and indeed, compels the result in this analysis, is that the Forest complaint alleges intentional defamation and Lintott's declaration conclusively establishes that she "intended all of the acts that resulted" in Forest's alleged injury – namely, the debate statement and broadcasted radio advertisements concerning Forest.  Those statements were not unintentional, unexpected acts; they thus do not qualify as an "accident" merely because Lintott states that she not intend them to be false.  *See id.*  In sum, Lintott's statements were not an "accident," and they do not fall within the Policy's potential scope of coverage.  *See id.* at 396 (finding no potential coverage because claimed damage did not arise from an "accident" and reversing trial court's denial of summary judgment).

Lintott makes essentially four substantive arguments in opposition to Grange's motion.[3]  First, she argues that the Policy is ambiguous because it covers defamation, which is an intentional tort.  Therefore, according to Lintott, the policy cannot be construed as covering only accidental defamation and the Grange has a duty to defend her. (Dkt. No. 33 at 11-12, 14-15.)  Relatedly, Lintott argues that the contract should be construed as covering the defamation alleged in the Forest

---

[3] In conjunction with her response to Grange's motion for summary judgment, Lintott requests that the Court take judicial notice of (1) the California Superior Court's ruling on Lintott's special motion to strike; (2) California Civil Code sections 44-46; and (3) the Judicial Council of California Jury Instructions (CACI) Nos. 1700-1720. (*See* Dkt. No. 33-2 at 2.)  Grange does not oppose Lintott's request.  Because the Superior Court's ruling on Lintott's motion to strike "is not subject to reasonable dispute" and can "be readily determined from sources whose accuracy cannot reasonably be questioned," and the parties stipulated to its authenticity (Dkt. No. 32-11), Lintott's request for judicial notice of that ruling is hereby **GRANTED**.  Fed. R. Evid. 201.  Because California case law, including the cases cited by both parties, provide the Court with sufficient explanation of California law for the Court to rule on Grange's motion, Lintott's request for judicial notice of California Civil Code sections 44-46 and CACI Nos. 1700-1720 is **DENIED** as moot.  Separately, the Court notes that to the extent Lintott challenges evidence in support of Grange's motion, her objections are either without merit or immaterial.  The critical pieces of evidence underlying the present ruling (the Policy itself, the defamation claim at the center of the Forest action and the operative complaint in that action, the statements Lintott made in her advertisement and at the debate, and her own declaration) are not subject to reasonable dispute, and indeed, Lintott herself relies upon them in her briefing.

11

action because that is what an insured would reasonably believe it to mean.  (Dkt. No. 33 at 12-13, 15-16.)  Second, Lintott appears to argue that underlying action has yet to resolve and that she may ultimately prevail, and that therefore this action is either premature or unsupportable as a matter of law.  Third, Lintott argues that because the Forest action seeks damages that are potentially covered by the Policy, Grange has a duty to defend her.  Finally, Lintott argues that by construing the policy as not covering the defamation at issue in the Forest action would render the Policy meaningless and create illusory coverage.  (Dkt. No. 33 at 14-15.)  The Court addresses each of Lintott's arguments in turn.

As to Lintott's first argument that the Policy is ambiguous, the Court disagrees.  The Policy covers "libel, slander, or defamation of character" if it is the result of an "occurrence."  (Dkt. No. 32-10 at 22.)  It defines "occurrence" as "an accident."  (Dkt. No. 32-9 at 17.)  Thus, by its own terms, the Policy provides coverage for accidental defamation.  The terms themselves, and in conjunction, admit of no ambiguity.  It is not for the Court to read ambiguity into a contract where the terms are clear.  *See Ticor Title Ins. Co v. Emp'rs Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995) ("Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further.")

Lintott argues that the Policy must be ambiguous because it would be unreasonable to construe the contract to cover an intentional tort only if it is the result of an accident.  (Dkt. No. 33 at 15.)  But the notion that an intentional tort can occur by accident is not implausible, and California courts have determined as much.  Indeed, California courts have held that liability for defamation can arise accidentally where the publication of a statement was unintentional.  *See Uhrich*, 109 Cal. App. 4th at 610 (citing *Hellar v. Bianco*, 111 Cal. App. 2d 424, 426-27 (1952)).

In *Hellar v. Bianco*, a woman brought a defamation suit against the owners of a tavern.  111 Cal. App. 2d at 425.  She claimed that she was defamed by libelous statements that a patron had written about her on a wall in the men's restroom.  *Id.*  The proprietors of the tavern could be held liable, she argued, because the staff at the tavern knew of the libelous statements but failed to remove them.  *Id.* at 426.  The court reversed the trial court's grant of nonsuit, reasoning that it was a jury question "whether, after knowledge of its existence, respondents negligently allowed the

12

defamatory matter to remain for so long a time as to be chargeable with its republication." *Id.* at 427; *see also* Restatement (Second) of Torts § 577 (defamation cognizable where publication occurs intentionally or negligently). *Hellar* demonstrates that defamation can be an accident where the publication of the statement, not its falsity, is accidental or unintended. Therefore, Lintott's insurance policy, fairly construed, covers defamation when it is the result of the unintended or accidental publication of a false statement. This is meaningful coverage, as defamation can be the result of accidental publication. *See Hellar*, 111 Cal. App. 2d at 426-27.

Lintott's related argument that the Policy should be construed as an insured would reasonably expect, and that an insured would reasonably expect coverage for the statements she made in the radio advertisement (Dkt. No. 33 at 12-14, 15-16), does not persuade.[4] First, an insured would reasonably expect the Policy to cover what the Policy itself unambiguously says that it covers: defamation that is the result of an accident. (*See* Dkt. No. 32-10 at 7 (providing liability coverage "[i]f a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" [. . .] caused by an "occurrence" [. . .]).) Additionally, taking a full view of the Policy and Endorsement at issue in this case reveals that no reasonable insured could have understood the Policy to mean anything other than that. For an additional premium of $31 a year, Lintott obtained multiple endorsements, including the one at issue here, which provided a broader definition of "bodily injury," including accidental libel, slander, or defamation. (Dkt. No. 32-9 at 3.) Lintott's position – that the insured should be free to commit wholly intentional torts and thereafter be entitled to coverage in the event of a lawsuit – is implausible given the nature of the Endorsement. Thus, not only does the Policy unambiguously provide that such defamation must have been the result of an accident, reading it to mean what it says makes logical sense.

Lintott's second argument is predicated on her belief that the ultimate disposition in the Forest action will bear on the question of coverage and the duty to defend under the Policy, and that the defenses she has leveled in that action could compel Grange to indemnify her ultimately. For

---

[4] The Court notes that there is no evidence that the insured here sought an endorsement to protect against intentional torts not of an accidental nature, or that Grange represented that the Endorsement provided coverage of defamation where not caused by an occurrence, or accident.

example, Lintott argues that her conduct could be found to have been negligent[5], or separately, that she did not intend to make any false statements about Forest.[6] (Dkt. Nos. 33 at 20; 33-2 ¶ 7.) Similarly, she argues that Grange has not proffered evidence sufficient to establish that defamation actually occurred.

The question of whether defamation, or negligent defamation, in fact occurred, or whether Lintott's defenses to the Forest action are ultimately successful, is not relevant to the question presented here. In this action, the Court is called upon to determine whether the Policy provides coverage or the potential for coverage for Lintott in the Forest action. That question can be answered only upon analyzing facts not subject to reasonable dispute, the Forest complaint, and consulting the Policy as a whole. As stated above, the Policy provides coverage only in the event of an accident. Applying case law construing the scope of the term "accident," the fact of Lintott's statements cannot reasonably be said to be unintentional or accidental even if she did not intend the harm alleged. *See Fire Ins. Exchange*, 181 Cal. App. 4th at 392 ("When an insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury."); *Ray v. Valley Forge Ins. Co.*, 77 Cal. App. 4th 1039, 1045 (1999) ("Although the term "accident" is not defined in the policy, courts have consistently defined the term to require unintentional acts or conduct."). Lintott admits that she "prepared" and "approved" the content of the radio advertisement. (Dkt. No. 32-11 at 1-2.) She

---

[5] Lintott contends that *Uhrich v. State Farm Cas. Co.*, 109 Cal.App.4th 598 (2003) is favorable for her because it affirms that defamation can be the result of negligence. (Dkt. No. 33 at 1-2.) Although *Uhrich* recognized that defamation can be the result of negligence, that alone does not defeat Grange's summary judgment motion. *Uhrich* affirms that defamation can be the result of negligent *publication*, but the radio advertisement at issue in the Forest action was a "planned" and "researched" political maneuver, not an accidental re-publication of a statement. *See Uhrich*, 109 Cal. App. 4th at 610 (citing *Hellar*, 111 Cal. App. 2d at 426-27). In other words, *Uhrich* demonstrates that Lintott's homeowner's policy provides meaningful coverage for defamation, but it also shows that her statements do not fall within that coverage.

[6] Lintott argues that Grange has presented no evidence to establish that she intended to make false statements about Forest. She claims that as to the underlying defamation claim, Grange must carry the burden of proof. (Dkt. No. 33 at 22-23 (citing *Brown v. Kelly Broadcasting*, 48 Cal. 3d 711, 731 (1989).) The Court disagrees. Regardless of upon whom the burden of proof on the underlying defamation claim rests, this does not bear on the question of whether the Policy extends coverage to the Forest action.

1  also states that her statements about Forest were based on her "personal knowledge and inquiry
2  regarding Mr. Forest." (Dkt. No. 33-2 ¶ 7.) By her own admission, Lintott's statements about
3  Forest were not accidental. (Dkt. Nos. 32-11 at 1-2, 33-2 ¶ 7.) *Cf. Hellar*, 111 Cal. App. 2d at
4  427.[7] Therefore, the complaint in the Forest action, viewed in conjunction with the evidence
5  (particularly Lintott's declaration and the parties' stipulation), "can by no conceivable theory raise
6  a single issue which could bring it within the policy coverage" and summary judgment for Grange
7  on the questions of both the duty to defend and the duty to indemnify is appropriate. *Atl. Mut. Ins.*
8  *Co. v. J. Lamb*, 100 Cal. App. 4th 1017, 1038 (2002).

9  Lintott's third substantive argument – that the Forest action seeks damages potentially
10 within the scope of the Policy's coverage and that Grange has a duty to defend her – also does not
11 persuade. In order to prevail on the duty to defend, Lintott "must prove the existence of a potential
12 for coverage, while the insurer must establish the absence of any such potential. In other words, the
13 insured need only show that the underlying claim *may* fall within policy coverage; the insurer must
14 prove it *cannot*." *Uhrich*, 109 Cal. App. 4th at 608 (citations, internal quotations, and emphases in
15 original). The duty to defend, however, is limited by the nature and kind of risk covered by the
16 policy. *Id*. Thus, "where there is no potential for coverage, there is no duty to defend." *Id*.
17 (emphasis omitted).

18 Lintott argues, incorrectly, that the Policy "expressly covers" defamation and slander, and
19 that therefore, her liability for damages resulting from the Forest defamation claim is potentially
20 covered by the Policy. (*See* Dkt. No. 33 at 14.) For the reasons stated above, however, the Policy's
21 scope of coverage is unambiguous: defamation is covered only in the event of an accident. Lintott
22 has failed to establish that the underlying claim potentially falls within the scope of coverage, for

---

[7] Although not raised by the parties, the Court notes that in reaching this conclusion it is not alone among federal courts applying California contract law. *See Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268, 270 (N.D. Cal. 1991) ("Where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.") (internal citation omitted); *Francis v. Allstate Ins. Co.*, 869 F. Supp. 2d 663 (D. Md. 2012) (applying California contract law and concluding that defamatory statements that were not involuntary could not constitute an accident for insurance coverage purposes). Although dicta in *Allstate Ins. Co.* suggests that defamation can never be the result of an accident, the Court disagrees for the reasons stated above and in *Hellar*.

15

her own declaration establishes that no accident took place. Thus, there is no potential for coverage here, and no duty to defend.

Finally, Lintott argues that construing the Policy as not covering the damages alleged in the Forest action would render the Policy's coverage of "libel, slander, [and] defamation of character" illusory. (Dkt. No. 33 at 14-15.) That is not so. Because accidental defamation is a cognizable cause of action, effect can be given to the relevant terms of the Policy without rendering the defamation portion of it meaningless. *See Uhrich*, 109 Cal. App. 4th at 610 (citing *Hellar*, 111 Cal. App. 2d at 426-27).

For the reasons set forth above, the Court finds that Grange is entitled to a summary judgment finding that neither the potential for coverage or coverage is present with respect to the claims asserted against Lintott in the Forest action.

### C. Reimbursement of Fees

Grange argues that it is entitled to reimbursement of costs it has expended in defending Lintott in the Forest action because the Policy does not provide coverage for any of the claims Forest asserted. (Dkt. No. 32-1 at 14-15 (citing *Buss v. Superior Court*, 16 Cal. 4th 35 (1997)). Lintott, however, has not responded sufficiently to Grange's argument. Accordingly, the Court has not had the benefit of fulsome briefing on this subject and reserves on the issue.

The Court thus **ORDERS** as follows: Lintott shall file a brief of no more than **five pages** in response to Grange's request for reimbursement of fees expended in defending her in the Forest action by no later than **January 16, 2015**. Any reply thereto shall be no more than **five pages** and due no later than **January 23, 2015**.

### IV. CONCLUSION

For the reasons stated above, Lintott's motion to strike is **DENIED** and Grange's motion for summary judgment is **GRANTED IN PART**. The parties shall submit further briefing on the reimbursement question in conformity with the deadlines set forth above.

This order terminates Dkt. Nos. 32 & 38.

**IT IS SO ORDERED**.

Date: January 5, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**